

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 5 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GUSTAVO ALMAGUER. | § | |
| Plaintiff, | § | |
| | § | CASE NO. B-94-328-4 |
| V. | § | |
| | § | |
| SHERIFF ALEX F. PEREZ, THE | § | |
| COMMISSIONERS COURT OF | § | |
| CAMERON COUNTY AND | § | |
| CAMERON COUNTY, | § | |
| Defendants | § | |

## DEFENDANT CAMERON COUNTY'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Cameron County (including the Cameron County Commissioners in their

official capacities), Defendant in the above-styled and numbered cause and moves the Court for

summary judgment in favor of Defendant pursuant to Rule 56(b) of the Federal Rules of Civil

Procedure on the ground that there is no genuine issue of material fact and that Defendant is

entitled to judgment as a matter of law as to the issue of whether the County is liable under

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

for claims stemming from an alleged policy of deliberate indifference of serious medical needs

in violation of the Eighth Amendment, and stemming from an alleged denial of proper medical

treatment of Plaintiff's right arm. This motion is based on the following that is attached to this

motion:

a.    Inmate Classification Profile and Infirmary Records of Gustavo Almaguer dated
      March of 1993 through October of 1993.

1

b.     Policy and Procedure Manual for Cameron County Jail.

c.     Cameron County Sheriff's Department Inmate Handbook..

## STATUS OF THE CASE

1.     Plaintiff initially brought suit in September of 1994 against the Cameron County Jail, Nurse Pauline Alonzo, Nurse Mirna Castillo, Lt. Juan Canul, and Joe Elizardi in the U.S. District Court, Eastern District of Texas.   This case was then transferred to the Brownsville Division in January of 1995.  It was dismissed and consolidated into Civil Action No. B-93-260.  On February 10, 2000, an Order by Magistrate John William Black vacated the consolidation and reinstated this case. Plaintiff filed an amended Petition and counsel for Cameron County responded for the Cameron County Commissioners in their official capacities.

## MEMORANDUM OF AUTHORITIES

### Summary Judgment Standard

2.     Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor.  Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

3.     A Party seeking summary judgment bears the initial burden of informing the court of the basis   for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.E.2d 265 (1986).  Where a party will have

2

the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.,* at 322-323, 106 S.Ct. at 2552-2553.

4.      The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith radio Corp.,* 475 U.S. 560, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**Nature of the Suit**

**Plaintiff's Contentions**

5.      The plaintiff has sued defendants in their official capacities, which is the same as suing Cameron County. In *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir. 1980) the Court stated:

> "Actions for damages in [a defendant's] official capacity are, in essence, actions against the governmental entity of which the officer is an agent. *Monell v. Department of Social Services,* 436 U.S. 658, 690 n.e. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978)..."

6.      Plaintiff has sued Cameron County under 42 U.S.C. §1983, the Fifth, Eighth, and

3

Fourteenth Amendments to the United States Constitution. For those periods that Plaintiff's incarceration was as a pretrial detainee, the Fifth and Fourteenth Amendments Due Process Clauses are applicable. For those periods after which plaintiff was convicted, the Eighth Amendment Cruel and Unusual Punishment Clause is applicable. However, the Fifth Circuit has adopted the standard of deliberate indifference to serious medical needs as applicable to either case. See *Hare v. City of Corinth, 74 F.3d 633, 639-643.*

7.     Plaintiff alleged that Cameron County failed to provide the proper medical treatment to his right arm, which he injured prior to being put in custody at the Cameron County Jail. The Plaintiff contends that the County deprived him of his constitutional right to medical care and that deprivation was with deliberate indifference to his medical needs.

**Defendant's Contentions**

8.     Cameron County contends that it was not deliberately indifferent in providing medical care to Plaintiff. Cameron County had policies and procedures in place that if followed insured the adequate delivery of medical care within the Cameron County Jail. Any act or omission of a County official in the delivery of medical care was not the result of the application or execution of a policy or custom adopted or maintained with objective deliberate indifference to the Plaintiff's constitutional rights.

9.     If the Court finds that the Plaintiff has alleged or shown actionable conduct on the part of a County official, which is denied, the proper standard of care that was breached was that of medical negligence. To the extent that the evidence on file shows medical negligence in the treatment and diagnosis of Plaintiff's medical condition, the Plaintiff's causes of action under 42 U.S.C. §1983 are negated by such evidence. Because the summary

4

judgment evidence does not rise beyond negligence, the Plaintiff has failed to show a §1983 cause of action.

**Undisputed Facts**

10.   On March 14, 1993, Plaintiff was arrested and incarcerated in the Cameron County Jail. At the time of incarceration, Plaintiff had a short cast on his right arm.

11.   Plaintiff was seen at the Cameron County Jail Infirmary for classification purposes and was excused from work duty and recreation.

12.   On May 17, 1993, the cast was removed from Plaintiff's arm.

13.   On June 14, 1993, Plaintiff was referred to Dr. Adobatti for follow up on Plaintiff's arm.

14.   Plaintiff was taken to see Dr. Adobatti on September 8, 1993, but was not seen by Dr. Adobatti, because he had not been the doctor to put the cast on Plaintiff. Plaintiff was then referred to Dr. Lash.

15.   Dr. Lash examined Plaintiff's wrist on three separate visits.

16.   Plaintiff was transferred to Texas Department of Corrections on July 9, 1994.

**The County's Liability under 42 U.S.C. §1983.**

17.   The proper analysis of a §1983 claim against a municipality requires two separate inquiries: (a) whether Plaintiff's harm was caused by a constitutional violation; and (b) if so, whether the city is responsible for that violation. *Collins v. Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261(1992).*

18.   County liability under §1983 can only be established if the plaintiff can point to customs or policies of the county depriving the plaintiff of constitutional rights. *Colle v. Brazos County, 981 F.2d 237, 244 (5th Cir. 1993).* A "sheriff is without question the county's final policymaker in the area of law enforcement... Thus a municipality. . . can be held

5

accountable for the . . .unconstitutional actions of [its sheriff]." *Id.*

19.   In *Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, 825 (1994)*, the

Supreme Court discusses, explains and finally defines "deliberate indifference" for

purposes of Eighth Amendment liability. At page 824 the Court states:

> "Although we have never paused to explain the meaning of the term 'deliberate
> indifference,' the case law is instructive. The term first appeared in the United
> States Reports in *Estelle v. Gamble, 429 US, at 104, 50 L.Ed.2d 251, 97 S.Ct. 285,*
> and its use there shows that deliberate indifference describes a state of mind more
> blameworthy than negligence. In considering the inmate's claim in *Estelle* that
> inadequate prison medical care violated the Cruel and Unusual Punishments
> Clause, we distinguished 'deliberate indifference to serious medical needs of
> prisoners,' *ibid.,* from 'negligen[ce] in diagnosing or treating a medical condition,'
> *id.* at 106, 50 L.Ed.2d 251, 97 S.Ct. 285, holding that only the former violates the
> Clause. We have since read *Estelle* for the proposition that Eighth Amendment
> liability requires 'more than ordinary lack of due care for the prisoner's interests
> or safety.' *Whitley v. Albers, 475 US 312, 319, 89 L.Ed.2d 251, 106 S.Ct. 1078
> (1986)."*

Then at page 825 the Court for the first time defines "deliberate indifference":

> "We reject petitioner's invitation to adopt an objective test for deliberate
> indifference. We hold instead that a prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane conditions of confinement
> unless the official knows of and disregards an excessive risk to inmate health or
> safety; *the official must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also draw the
> inference....* " (Emphasis added.)

20.   The Fifth Circuit has defined a policy, practice or custom as:

   a.   A policy statement, ordinance, regulation or decision that is officially adopted and

   promulgated by the municipality's law-making officers or by an official to whom

   the law-makers have delegated policy-making authority; or

   b.   A persistent widespread practice of city officials or employees, which, although

   not authorized by officially adopted and promulgated policy, is so common and

   well settled as to constitute a custom that fairly represents municipal policy.

6

Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. *Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed.2d 612 (1985).*

21.   Considering the Fifth Circuit's definition of policy, practice, or custom, and the summary judgment evidence, the only conclusion that we can reach is that there is no evidence whatever that the County Jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to Plaintiff, or that the Sheriff was otherwise actually informed or consciously believed that the County policy would expose Plaintiff to substantial risk of significantly unmet serious medical needs.

22.   The County met Plaintiff's medical needs in the following ways:

a.   On March 14, 1993, Plaintiff was taken to the infirmary for examination at the time of his booking for classification purposes.   He was given a single cell and excused from work duty and recreation.   (See Cameron County Sheriff's Department Inmate Classification Profile as Exhibit "1" and Cameron County Jail Admission Data-Jail Inmate's Medical Records as Exhibit "2".)

b.   On May 17, 1993, Plaintiff was seen by the Infirmary to remove his cast and was given hydrocortizone cream for his right wrist. (See Exhibit "2".)

c.   Plaintiff was taken to see Dr. Lash three times for examination of his wrist.   The first time (September 20, 1993), Dr. Lash found that the fracture had healed with an angulation, but the x-rays looked good.   He recommended anti-inflammatory medication.   The Jail Infirmary staff made bags for Plaintiff's medication to be

7

distributed at 7:00 a.m., 12:00 p.m., and 9:00 p.m. for ten days as ordered. The second time Plaintiff was taken to see Dr. Lash (October 4, 1993), Dr. Lash recommended plain ascriptin. Dr. Lash also stated that if the pain continued in Plaintiff's wrist, that he might have an osteotomy performed. The third time Plaintiff was taken to Dr. Lash (October 19, 1993), Dr. Lash found that Plaintiff's wrist was functional. Dr. Lash recommended a second opinion and stated that he did not need to see Plaintiff again. (See Exhibit "2".)

23.   Under the facts of this case, there was no constitutional violation of Plaintiff's Eighth Amendment. It cannot be said that the County acted with deliberate indifference to plaintiff's medical needs. Cameron County officials made a good-faith effort to meet the requirements to provide adequate medical care for Plaintiff's right wrist.

24.   Further, Plaintiff fails to allege any custom or policy of the County that resulted in the County's deliberate indifference to his serious medical needs. The County provides all inmates with a Cameron County's Sheriff's Department Inmate Handbook and a Policy and Procedure manual for the Cameron County Jail that informs the inmates of the operations of the Cameron County Jail and of the procedures for grievances and medical assistance. (See Cameron County's Sheriff's Department Inmate Handbook as Exhibit "3" and Policy and Procedure Manual for the Cameron County Jail Exhibit as "4".)

25.   The County had in place a medical assistance program that allowed for Plaintiff to receive the proper medical treatment from the jail infirmary staff, which includes a doctor under contract with Cameron County, or if necessary medical treatment from outside sources for specialized care or emergency purposes. It was this policy that allowed Plaintiff to see Dr. Lash three times for examination and evaluation of his right

wrist.

WHEREFORE, Defendant Cameron County prays this Court enter an order granting summary judgment with prejudice to the refiling of the same and for such other and further relief to which Defendant may be entitled.

Respectfully submitted,

CIVIL LEGAL DEPARTMENT
COMMISSIONERS COURT
964 East Harrison Street
Brownsville, Texas 78520
Telephone: 210/550-1345
Facsimile: 210/550-1348

BY: _____
Dylbia L. Jefferies Vega
Attorney in Charge
Texas State Bar #00786515
S.D. No. 17065


## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2002, a copy of the foregoing was mailed via certified mail, return receipt requested to Abner Burnett at 316 N. Texas Ave, Odessa, Texas 79761.

_____
Dylbia L. Jefferies Vega


## CERTIFICATE OF CONSULTATION

I hereby certify that this pleading is exempt from the consultation requirement in the Local Rules.

_____
Dylbia L. Jefferies Vega

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUSTAVO ALMAGUER. | § | |
| Plaintiff, | § | |
| | § | CASE NO. B-94-328-4 |
| V. | § | |
| | § | |
| SHERIFF ALEX F. PEREZ, THE | § | |
| COMMISSIONERS COURT OF | § | |
| CAMERON COUNTY AND | § | |
| CAMERON COUNTY, | § | |
| Defendants | § | |

## AFFIDAVIT OF JOE ELIZARDI

| | |
|---|---|
| THE STATE OF TEXAS | § |
| THE COUNTY OF CAMERON | § |

Before me, the undersigned authority on this day appeared Joe Elizardi, who, after being by me duly sworn, upon his oath deposes and says that he is over twenty-one years of age and is of sound mind and says that the statements herein contained are within his personal knowledge and are true and correct:

1. My name is Joe Elizardi and I was the Chief of the Cameron County Jail for the years 1993 and 1994.

2. As the Chief of the Cameron County Jail, I had custody of the jail inmate files, Cameron County Jail policies and manuals, and jail inmate infirmary files.

3. The attached Policy and Procedure Manual for the Cameron County Jail and the Cameron County Sheriff's Inmate Handbook are a true and correct copy of the Policy and Procedure Manual for the Cameron County Jail and the Cameron County Sheriff's Inmate Handbook in place for 1993 and 1994 and were filed and kept in the regular course of operation of the Cameron County Jail.

4. The attached 11 pages of Cameron County Jail Infirmary records for Gustavo Almaguer are a true and correct copy of Gustavo Almaguer's infirmary records while incarcerated in the Cameron County Jail from March of 1993 until October of 1993. They were made at or near the time of the his medical examinations, or from information transmitted by, a person with knowledge of those medical examinations. They were filed and kept in the regular course of operation of the Cameron County Jail Infirmary.

Further Affiant sayeth not.

_____
Joe Elizardi

Sworn to and subscribed to before me, on this the 25th day of February, 2002, to witness my hand and official seal of office.

Irene G. Gonzalez
Notary Public, State of Texas
My Commission Expires
OCTOBER 27, 2004

Notary Public for the State of Texas,
My Commission Expires: 10/27/04

# EXHIBIT "1"

# CAMERON COUNTY SHERIFF'S
# DEPARTMENT INMATE CLASSIFICATION PROFILE

Case 1:94-cv-00328   Document 50   Filed in TXSD on 02/25/2002   Page 13 of 59

IRON COUNTY SHERIFF'S DEPART
Inmate Classification Profile
ALEX F. PEREZ, SHERIFF 

| NAME | Gustavo Almaguer | D.O.B. | 6-10-57 | AGE | 35 | MAR. STATUS | SINGLE | DATE | 3-14-1983 |
|---|---|---|---|---|---|---|---|---|---|
| AKA | | SEX | M | HGT | 5-8 | WGT | 160 | HAIR | BLK | EYES | BRN | INMATE # | 63049 |

**Address** Lot-8 Bayside Courts Laguna Hights Tex.
**OFFENSE** Burglary Of Building

**Arresting Agency** B.P.D.   **Delivering Officer** Perez   **PRIOR RECORD** Yes

**In Case Of Emergency** Jesse Almaguer   **Address** 3714 Setndos Angeles   **Phone** —

**A. FIRST OFFENDER AWAITING TRIAL**
1. [ ] Age 17-21 - Felony Offense
2. [ ] Age 22 and older Felony Offense   NO
3. [ ] Age 17-21 - Misdemeanor Offense
4. [ ] Age 22 and older Misdemeanor Offense

**E. CONSIDER FOR MAXIMUM SECURITY**
1. [ ] Violent / Aggressive
2. [ ] Escape Risk   NO
3. [ ] Infamous or Heinous Crime

**B. PREVIOUSLY CONVICTED OFFENDERS**
1. [ ] Age 17-26 Prior Felony Convictions
2. [✓] Age 27 and older Prior Felony
3. [✓] Age 17 and older Prior Misdemeanor Convictions

**F. SPECIAL ATTENTION OFFENDERS**
1. [ ] Adjudged Insane
2. [ ] Suspected Insanity
3. [ ] Suicidal Tendencies   NO
4. [ ] Homosexual
5. [ ] Protective Custody

**C. MEDICAL PROBLEM OFFENDER**
1. [ ] Communicable or Contagious Disease
2. [ ] Physical Injury
3. SEE REMARKS

**G. TRUSTY WORK RELEASE – WEEKEND**
1. [ ] Trusty
2. [ ] Work Release   NO
3. [ ] Weekend Detention

**D. WITNESS: (Not Charged)**
1. [ ] Federal
2. [ ] State   NO
B2

**H. TYPE OF PRISONER**
1. [ ] Federal
2. [✓] State

| Classification Number(s) 9-3-C-3 H3 B-2 | Cell Assignment 3DL XCCB3 | Classifying Officer F. GUERRERO |
|---|---|---|
| Date Classified 3-14-93 | Cell Transfer-Date | Reason | Approved By |

REMARKS: W/a frett c BMC/ER 10 Day ago - R/gag on Dug-
Pt. Addict - Fx Rt Radi/ulna - Fx clav crest-
Lft from BMC 3 Day ago - Arrives with cast Rt a-
TN marks 2° to TN thing in Hospital-
Will place 2nd floor lock up will visitze c
Non-A person

# EXHIBIT "2"

# CAMERON COUNTY JAIL ADMISSION DATA- JAIL INMATE'S MEDICAL RECORDS

Case 1:94-cv-00328   Document 50   Filed in TXSD on 02/25/2002   Page 15 of 59

# ＣＡＭＥＲＯＮ ＣＯＵＮＴＹ ＪＡＩＬ

## ADMISSION DATA — Jail Inmate's Medical Record

Inmate's File Number

NAME (LAST) Thrasher, First Gustavo Middle

Age 33 | Race W | Sex M | Date of Birth 6-10-52

Admitted MAR 1 4 1993 | Charge: | Assigned To: Stark

ALLERGIES (Record in red ink; mark on the chart.)   NKA

Have you ever been treated for:

| | | |
|---|---|---|
| 1. Asthma | ☑ No ☐ Yes | 6. Drug Addiction ☑ No ☐ Yes |
| 2. Heart Trouble | ☑ No ☐ Yes | 7. Alcoholism ☑ No ☐ Yes |
| 3. Hypertension | ☑ No ☐ Yes | 8. Mental Illness ☑ No ☐ Yes |
| 4. Diabetes | ☑ No ☐ Yes | 9. Venereal Disease ☑ No ☐ Yes |
| 5. Epilepsy or Seizures | ☑ No ☐ Yes | 10. Tuberculosis ☑ No ☐ Yes |

If YES to any of the above, give date and the treatment received.

Do you have any medications, prescriptions or current medical problems that need attention?

(DESCRIBE IN DETAIL ON THE CHART)

Is there any evidence of recent physical injury seen on inmate? (IF YES, GIVE DETAILED INVENTORY ON THE CHART)

How were injuries received according to inmate?

Was inmate treated for these injuries prior to admission? ☐ Yes ☐ No At:

| Date | Time | Treatments and Observations | Attending Physician or Nurse |
|---|---|---|---|
| MAR 1 4 1993 | 1½ᵂ | Was treated BMC/Sn 10 days ago after fall down 35 foot embankment — at that time — skull films — Rt Arm — KUB — Done — Dr. Carl Snow o/c admit pt. to hospital — consult with Dr. Robbiati — CT of ABD Done — (—) pr. A Uttel — W oz Rlsd from BMC — 3 Days ago Arrive with short arm cast — fx Rt Ulna/radii — | |

# Gustavo Almaguer

| | Time | Treatments and Observations | Attending Physician, Nurse, or Officer |
|---|---|---|---|
| | | Crest - Was on bedrest - There are no single cell in infirmary - Will place in single cell 2nd floor - Lock up with privileges - no telephone or recreation until further notice | R |
| 5/17/93 | | O - Cast removed @ forearm applied HCTZ c̄ P - DC Motin 400 g | J. Garcia P.A. |
| JUN 08 1993 JUN 08 1993 | | Inmate had ⊕ PPD 10mm on 6/4/93 & sent to TBC for CXR same day - Today received orders from Dr. Smith at TBC to Draw LFT's and initiate INH 300mg ① qd ✗ INH 300mg ③ m + Th - | Tommy B. |
| 6/14/93 - | | LFT'S ✓ - DC INH and redraw in 2 weeks - I/m c/o discomfort to Rt arm/hand - ⊕ Refer to DR Addobbati for FU - Sorosuity is present. | Tommy |
| Sept. 8, 1993 | | Went to Dr. Addobatti - not seen as Dr. A. had not done cast on ® hand. To refer to Dr. Lash. - | Gonzalez RN |

| | Time | Treatments and Observations | Attending Physician, Nurse, or Officer |
|---|---|---|---|
| Sept. 15,1993 | | Refer to Dr. Lash for f/up appt c/o having discomfort to (R) wrist post wrist in cast. —————— | Gonzales RN |
| SEP 16 1993 | | Appl set c Dr Lash for 9/20/93 MD 10:30 Ar —————— | Gonzales RN |
| SEP 20 1993 | | Returned from appt c (Dr Lash) c Rx for Tolectin 600 TID X O deep #30 Ordered will give at 7A - 12. 9p - bags made Return appt 10/4/93 at 930am | |

Case 1:94-cv-00328   Document 50   Filed in TXSD on 02/25/2002   Page 18 of 59

Date _SEP 07 1993_

To Booking and Dispatch ....

The following inmate has an appointment at ........

DR. Ricardo Adobatti
95 E. Price Bldg. B.
Brownsville, Tx 78521.

Date _SEP 07 1993_                    Time _2:00pm_.

Name of inmate _Gustavo Almaguer._          Cell _2CL_

For: _F/U._

There for could you please arrange for transportation ................

Dr. _____

## HOSPITAL INFORMATION

INMATE'S NAME _Bertha Almaguer_

ADDRESS _____

DATE OF BIRTH _6 10 53_

SOCIAL SECURITY # _____

ADMITTING PHYSICAN _Dr Rust_

HOSPITAL _____

DIAGNOSIS _Evaluation of fx to @ wrist_

METHOD OF PAYMENT: (circle one)

1. PERSONAL ACCOUNT

2. CAMERON COUNTY SHERIFF'S DEPT.
   954 E. HARRISON
   BROWNSVILLE, TEXAS

3. USDM
   P.O. BOX 1585
   BROWNSVILLE, TEXAS
   ATT: LUISA PEREZ

Approved by (Nurse): _____

DATE: _____

SEP 16 1993

DEA # AL8139176

## B. N. LAKSHMIKANTH, M.D.
844 CENTRAL BLVD.
BROWNSVILLE, TX 78520
512-542-7001    544-0401

NAME _Gustavo Almaguer_

ADDRESS _____ DATE 9/20/93

R

~~Benadi~~

Tolectin 600mg PO

x 10 days

#30

SEP 20 1993

☐ Label

Refill _____ times    PRN    NR

_____ , M.D.
Product Selection Permitted

_____ M.D.
Dispense As Written

06/30/92

0901-K10692860

Date **OCT 0 4 1993**

To Booking and Dispatch ....

The following inmate has an appointment at ........

Dr. Lash
844 Central Blvd #100
Brownsville, TX

Date **OCT 0 4 1993**                    Time 09:30

Name of inmate *Gustavo Almaguer*          Cell B3

For: Re-evaluate

Ascription IRID x 2wks —
? Osteotomy — 2nd opinion

There for could you please arrange for transportation. ................

Dr. *Steve f Maxello*

*Gustavo Almaguer*
HAS AN APPOINTMENT ON

MON   TUE   WED   THUR   FRI   SAT

Date __OCT 1 8 1993__

To Booking and Dispatch ....

The following inmate has an appointment at ........

__DR. LASH__
__844 Central Blvd #100__
__Brownsville__

Date __10 / 19 / 93__                          Time __09:30 AM__

Name of inmate __Gustavo Almaguer__          Cell __B-3__

For: __Flu__

There for could you please arrange for transportation ...............

Dr. __Stev J Mastello__

Dr. Lash does not wish to see
above inmate anymore.

Date    **OCT 1 8 1993**

To Booking and Dispatch ....

The following inmate has an appointment at ........

DR. B.N. LASH

844 CENTRAL BLVD #100

BROWNSVILLE,TX

Date    **OCT 1 9 1993**                    Time    9  30am

Name of inmate    GUSTAVO ALMAGUER                    Cell    B-3

For:            FOLLOW-UP APPOINTMEN

There for could you please arrange for transportation ...............

Dr.

ORTHOPEDIC SURGERY     HISTORY AND EXAMINATION

Name
Address                                                SS#

ALMAGUER, GUSTAVO  9-20-93
Has been referred because of complaining of pain in the left and
apparently has had an injury to the wrist which was treated in the
emergency room almost in April. At this time he has a comminuted
fracture of the distal radius. He was treated with a cast at that
time. We have reviewed the charts. Apparently at that time they
talked to me but I have not seen this patient since then. He has
been picked up in the prison at this time. The fracture itself has
healed with an angulation. The x-rays look good. He has a
malunion and is complaining of pain in the ulnar styloid. I have
recommended some anti-inflammatory medications and see how things
go. I would like to have a second opinion before recommending
further treatment, possibly osteotomizing the radius.

ALMAGUER, GUSTAVO  10-5-93
Is still continuing to complain of the pain. Apparently they had
not given him the medication last time. I have recommended some
plain Ascriptin. I think if the pain continues to bother him he
might have an osteotomy done. I suggested a second opinion. I do
not know if the county is willing to pay for this. Patient will
decide and let us know.
PLEASE SEND THIS INFORMATION TO THE JAIL.

ALMAGUER, GUSTAVO  10/19/93
We have recommended a second opinion. He is here in the office.
I do not know what the prison system wants to do, and apparently
the medication that has been prescribed, they gave him some
aspirin. The aspirin does help him and it's OK for him to take the
aspirin. He should be able to do something with it. At this time
patient wants to get surgery done because he wants the wrist to
look straight. I think he is functional but he says it is hurting
him. If it is hurting him, I think he might end up getting an
osteotomy done. This has been explained to the patient, but before
I recommend anything, we recommend a second opinion.

Past Tests
☐ X-rays
☐ Cat Scans
☐ MRIs
☐ Other



# EXHIBIT "3"

# CAMERON COUNTY SHERIFF'S DEPARTMENT INMATE HANDBOOK

CAMERON COUNTY SHERIFF'S DEPARTMENT

# INMATE HANDBOOK



*"HELP US TO SERVE YOU BETTER"*

## Property of
## Cameron County Jail

## <u>DO NOT</u>
## DAMAGE OR DESTROY

CAMERON COUNTY SHERIFF'S DEPARTMENT
954 E. HARRISON ST.
BROWNSVILLE, TEXAS 78520
(512) 544-0860

## ALEX F. PEREZ
CAMERON COUNTY SHERIFF

CAMERON COUNTY SHERIFF'S DEPARTMENT

# INMATE HANDBOOK



*"HELP US TO SERVE YOU BETTER"*

## Property of
## Cameron County Jail

## <u>DO NOT</u>
## DAMAGE OR DESTROY

CAMERON COUNTY SHERIFF'S DEPARTMENT
954 E. HARRISON ST.
BROWNSVILLE, TEXAS 78520
(512) 544-0860

### ALEX F. PEREZ
CAMERON COUNTY SHERIFF

This Inmate Handbook has been prepared for YOUR benefit. You should read it carefully and completely so that you will know what conduct is expected of you and what services are available to you in jail.

You WILL be required to follow the instructions set out in this booklet while you are confined in this facility.

**ALEX F. PEREZ**
Cameron County Sheriff

Activities & Programs

    Religious .......................................... 6

    Education ........................................ 7

    Recreation ...................................... 7

Attorneys & Bondsmen ........................... 2

Channels of Communication ..................... 11

Clothing ............................................. 5

Commissary ..................................... 2, 4

Conduct ......................................... 1, 8

Correspondence .................................. 4

Disciplinary Procedures ......................... 8

    Notification ..................................... 9

    Appeal ........................................ 9

    Prohibited Acts ......................... 9, 10, 11

Escape — Contraband ......................... 3, 7

Food ................................................ 5

Inmate Number .................................... 3

Jail Management .................................. 1

Jail Property ....................................... 1

Library ............................................. 2

Mail ................................................ 1

Medical Services .............................. 1, 6

Money .............................................. 3

Personal Hygiene ................................. 6

Personal Property ............................. 1, 3

Recreation ......................................... 3

Telephone Calls ................................... 1

Use of Facilities/Hours ........................... 5

Visiting ............................................ 2

Sheriff's Department

    Telephone & Address .................... Front Cover

**I. You may be eligible for a Personal Recognizance Bond to be administered by the Cameron County Adult Probation Department if:**

A. You do not have an extensive record of arrests (evaluation by PR representative).

B. You have been a U.S resident of Cameron County for 6 months or more.

C. You have a verifiable address and references.

D. You are 17 years of age or more.

**II. You do not qualify if:**

A. Your present charge is any of the following:

    1. Rape

    2. Murder or Attempted Murder

    3. Any other type of violent crime (evaluation by PR representative.

B. You are addicted to drugs or alcohol.

C. You are charged with violation of probation or parole.

D. You are charged with a Federal offense.

E. You are an illegal alien or transient.

**III. If you believe you qualify for Personal Recognizance Bond, please notify the Deputy or Shift Supervisor on duty for the application form. This form will be forwarded to the Adult Probation Department.**

### The Choice To Observe The Above Rules
### Lies with You, the Individual Inmate

It is the wish of the Sheriff and the Jail Administration that when you leave this jail you will go back into the free world and make a place for yourself, live an honorable life, and develop into a citizen who will bring credit to his community, his family, and to his state

**ALEX F. PEREZ**
Cameron County Sheriff

**(To Be Returned Upon Your Release.)**

RULES FOR PRISONERS

**MANAGEMENT:** The operation and management of the jail and his staff. No inmate has the right to assign work to other inmates or have any control or supervision over them. Kangaroo courts, sanitary courts, and all other inmate organizations are forbidden.

**PERSONAL PROPERTY:** You are not permitted to keep cash or valuable articles in your possession. You will be given a receipt for your personal property and money, and you should keep this receipt for checking your belongings when you are released. You are not permitted to transfer your clothing or other property to another inmate. Gambling in any form is forbidden.

**TELEPHONE CALLS:** Immediately after being booked into the jail, you may call an attorney, bondsman, next-of-kin, and your employer. After you have made the initial calls, additional calls, if necessary, can be made between 8:00 a.m. and 3:00 p.m. Incoming calls will be authorized by the Assistant Chief Jailer. All long distance calls will be made collect.

**JAIL PROPERTY:** Bedding, towels, clothing, and other items assigned to you belong to the Cameron County Sheriff's Department —Jail Division. You must sign for these supplies at the time of issue, and you must return them in good condition upon release. You must not transfer any of these items assigned to you to another inmate. Do not damage plumbing or lighting or any other part of the jail building or equipment. You will be prosecuted for destruction of jail property.

**CONDUCT:** You must obey all of the jail rules and the Detention Officer's instructions. Minor violation of rules will be handled by the Detention Officers. All serious violations will be handled by the Chief Jailer and will be referred to the Disciplinary Committee. If you are under sentence, these disciplinary reports will be forwarded to the Texas Department of Corrections at the time of your transfer. For inmates doing County Jail time, any disciplinary reports can affect your good time.

**MAIL:** All incoming mail will be searched in your presence for contraband but will not be read. All out-going mail is to be sealed by you, the inmate, and will be delivered to the Post Office. All incoming and out-going mail to attorneys, judges, courts and all state and federal officials will not be opened. You will not be permitted to receive packages, if any are delivered for you, they will be returned to the sender.

**MEDICAL SERVICES:** A physician is employed to give you medical treatment when it is needed. If you think you need medical or dental attention, fill out a medical request slip and give it to the Detention Officer on your floor.

1

LIBRARY ...

... particular law book, which you will sign for ... and ... responsible for its condition on return. Newspapers will be allowed in cell blocks. If newspapers are misused or burned the privilege of having newspapers may be stopped. If you subscribe to a magazine, it must be sent directly by a Publishing Company. All correspondence courses must be approved by the Chief Jailer.

**ATTORNEYS & BONDSMEN:** Telephone numbers of all licensed bondsmen are posted on the first floor Booking Office, along with a list of attorneys for your use. All Cameron County Jail personnel are prohibited from making recommendations on attorneys or bondsmen — you make the choice. If you cannot hire an attorney, fill out a slip that will be given to you, and an attorney will be appointed by the court for you. If you cannot make bond, request an interview with a Personal Recognizance Representative; you may meet the requirements for a Personal Recognizance Bond

**VISITING:** All visits will be strictly supervised by Cameron County Jail personnel. Only visitors that you have approved of on your visiting card and mail card will be allowed to visit you; however, you may add or delete visitors as you wish. Visiting time will be 8:00-11:00 a.m and 1:00-4:00 p.m. All visitors must, on request, show identification and must correspond with the names you have listed on your visiting card. Special visits must be approved by the Chief Deputy, Chief Jailer, or Assistant Chief Jailer Attorneys may visit you any time during a normal working week and within reasonable working hours.

**Mabra VS Schmidt 356 Supp. 620 (W.D. Wis 1973)**
You may include five (5) adults on your Visiting List, **not counting** your attorney and minister. You will be allowed to make changes in your list every thirty days, **as long as you limit your list to five (5) adults.**

All visitors must present proper identification containing their photograph (either Driver's License or a Texas Department of Public Safety Identification Card), act and behave in an orderly manner, and be properly dressed. **Those who fail to observe this rule run the risk of being removed from the Visitor's List.** Mail and money may be brought to you by visitors, but will be left with the Shift Supervisor.

As a general rule, only members of your immediate family and close personal friends will be approved on your Visiting List.

Normally, your attorney will be allowed to visit you, upon presentation of proper identification, at any time between 8:00 a.m. and 8:00 p.m. any day of the week.

**2**

action against you inmate will be fully advised on the visiting rules when in view of visitors. No person who has been in a state prison during the past six (6) months will be allowed to visit you.

**RECREATION:** You will be allowed outside recreation three (3) times a week for one (1) hour. You must obey all instructions given by the Recreational Officers. Any misconduct during this period will be referred to the Chief Jailer for evaluation of a disciplinary report.

**ESCAPE — CONTRABAND:** Any inmate who esapes or attempts to escape, or assists another inmate to escape, or who is responsible for bringing into the jail any weapon, narcotic drug, or other contraband, will be prosecuted.

## I. INMATE NUMBER

You have been assigned an Inmate Number. It is extremely important that you remember this number since it will also be your Inmate Trust Fund and Commissary Card Number, and shown on all mail addressed to you.

## II. PERSONAL PROPERTY

All personal property (clothes, jewelry, etc.) that you had on you when you were booked into jail has been tagged and stored, and will be returned to you when you are released from jail. If, instead, you are sent directly from jail to the Texas Department of Corrections or to a Federal Prison, you will be allowed to (1) have a member of your family pick up your personal property at the jail, or (2) you may donate your personal property to a charity. The only personal property that your are allowed to have in your cell is that which you have bought from the Inmate Commissary. A violation of this rule will result in disciplinary action against you.

## III. MONEY

Any and all money that you had with you at the time you were booked into jail has been put in your Inmate Trust Fund. During your stay in jail, you will be allowed to buy commissary items, and the amount you spend will be deducted from your Inmate Trust Fund. When you are released from jail, the balance of money in your Inmate Trust Fund will be returned to you. Or, if you are sent directly to the Texas Department of Corrections or a Federal Prison, the balance of money in your Inmate Trust Fund will be sent with you to prison. While you are in jail money may be deposited to your Inmate Trust Fund by your family or friends. Cash should not be sent through the mail, but should be deposited in person at the jail between the hours of 8:00 a.m. and 9:00

3



order jumans and the selection is money and a billions

You may be allowed to release money from your Inmate Trust Fund to members of your family or to your Attorney, however, approval for you to do so must be obtained from the Chief Jailer **Money May Not Be Released To Another Inmate**.

You are not allowed to have money on your person or in your cell while you are in jail. A violation of this rule will result in disciplinary action against you

## IV. COMMISSARY

Various items of food and refreshment, toilet articles, cigarettes, writing paper and envelopes, stamps, etc., are available for purchase in the Inmate Commissary

To purchase Commissary, you must do the following:

A. Make certain that you have enough money in your Inmate Trust Fund to cover the cost of a Commissary Card. If you do not have sufficient money in your fund, your order will be marked "VOID".

B. To obtain Commissary, you must fill our a PRISONER'S WITHDRAWAL SLIP In the amount of the card you want. These slips may be filled out on Tuesdays, Thursdays, and Fridays of each week. The card will be delivered to you in oyour cell block.

C. The VENDOR will be in the cell blocks on Monday, Wednesday and Friday. You may purchase items and your Commissary will be deducted out of your trust fund.

Commissary Price Lists and special instructions for ordering, etc., will be issued periodically and placed in the cell block. You are urged to read these materials and follow the instructions.

## V. CORRESPONDENCE

**Palmigiano VS Travison 317 F. Supp. 776 (D.R.I. 1970)**   You may write to anyone as often as you wish, provided your letters do not in any way violate U.S Post Office regulations. All letters must be written on stationary that is purchased in the Inmate Commissary, envelopes stamped by you Letters sent to you will be delivered by the Shift Supervisor, opened and inspected in your presence for contraband, and handed to you unread.

Please advise the people who may write to you to do the following:

A Show their name and address on the envelope. (Any letter without a return address that in non-deliverable will be returned to the Post Office

4

... ... ...
... ... ... ... ... ...
... violation of the rules. Correspondence with another jail inmate
is also forbidden **unless it is approved first by the Chief Jailer** Any
violation of these rules will result in disciplinary action against you

## VI. USE OF FACILITIES/HOURS

You are required to keep your cell clean, and to respect the rights and
property of other inmates  You are not allowed in another inmate's
cell or bunk  A day room is provided in each cell block  TV and radio
will be kept in the day room

Each day room is intended for the use of all inmates assigned to the
cell block  Do not monopolize the choice of TV programs or use of the
day rooms.

"Rack Up" time for all inmates, except those who may be assigned to
work at night, is **Daily — 12:00 midnight.** Special requests for later
"rack up" may be sent to the Chief Jailer

## VII. CLOTHING

The regulation clothing that has been issued to you is your prescribed
dress while in jail  You are expected to keep your clothing clean, and
not to tear, mark, or alter it in any way  A violation of this rule will result
in disciplinary action against you

Dirty clothing will be picked up in the cell blocks on a regular
schedule, laundered and returned to you

In the event you are scheduled for a Court appearance that
requires you to be dressed in street clothes, you will be permitted to
use the clothing you wore when you entered jail. A member of your
family may be permitted to bring clothing to the jail for you to wear in
Court  All such street clothing will be returned to your Personal
Property following your Court appearance

## VIII. FOOD

You are expected to accept the food offered and not to waste or steal
food  Wasting, stealing food, or gambling will result in disciplinary
action against you

You may keep food in your cell that you have purchased from the
Inmate Commissary, so long as it is eaten **when the seal on the
container is broken. Foodstuffs in unsealed containers will be
confiscated for your protection against rodents, roaches, and
spoilage.** Food may not be mailed to you, or brought to you by family,
friends or other visitors.

5

the particular standard. These rules are required for the health and safety of all inmates. Violation may result in disciplinary action against you

## X. MEDICAL SERVICES

Medical services are available to you while you are in jail. If you require this attention, notify the Detention Officer and you will be scheduled for Sick Call. In case of emergency, call the Shift Supervisor for assistance immediately.

Stock piling of pills and medications, or exchange of pills and medication by and among inmates is strictly forbidden. Any violation of this rule will result in disciplinary action against you

## XI. WORK ASSIGNMENTS

A number and variety of jobs within the jail are performed by inmates. Inmate workers serving County Jail sentences receive $15.00 credit per day toward their find and court costs, and earn one (1) extra day credit for each three (3) days served in jail. Inmate workers whose cases are on appeal are recommended for "good-time" credit should they be transferred to the Texas Department of Corrections.

A. Inmates not under sentence are not required to work. They can volunteer, but you must check classification of each inmate.

Inmate workers are expected to perform their assigned jobs to the best of their ability, and not to abuse the responsibility placed upon them

If you may desire to volunteer for a work assignment, you should contact the Chief Jailer or Classification Officer.

## XII. ACTIVITIES AND PROGRAMS

A number of activities and programs are available to you in jail. Following is a list of the activities in which you may engage. **Bad behavior could restrict your participation in some of these activities.**

### RELIGIOUS

A Jail Chaplain is available for your personal or religious counseling. Church services may be held in the jail weekly if there is a request by sufficient inmates. Inmates may request visits from a clergyman of his own choosing. Request will be made in writing to the Assistant Chief Jailer.

6

OBJECTIVE: The purpose of this Plan is to provide for the religious needs of the inmates by providing the opportunity to attend religious services and obtain religious counseling

**ELIGIBILITY:** All inmates are eligible to attend group religious services, these services will be nondenominational in character and will be permitted Saturdays and Sundays, depending upon the availability of clergy.

All inmates are eligible to request private religious counseling from a clergyman of their faith or choosing. Such request will be made to the jailer The jailer will make every attempt to satisfy the specific request, if it is in accordance with security regulations and availability of guards

## EDUCATION

An Adult Basic Education Program is conducted in the jail for inmates. Inmates who do not have a high school diploma or G.E D certificate are encouraged to contact the SHERIFF for enrollment in the program.

## COUNSELING

Various counseling programs are available. They include alcohol, drug abuse, personal, family, educational and vocational programs Contact the Assistant Chief Jailer or Counselor for enrollment in relevant programs

## RECREATION

You will be permitted certain periods for recreation, unless you may be in "protective" or "isolation" confinement. If you choose to participate in outdoor recreation, you will be expected to observe the conduct of a "good sport."

## XIII. CONTRABAND

You are prohibited from having certain items while you are in jail, and possession of any contraband is a serious offense for which you will be disciplined. Items which you may not have (in addition to those listed in various sections of this handbook) are: any alcoholic beverage; any narcotic drug; **Marijuana or any drug prohibited by the Penal Code of the State of Texas;** any weapon or item that **could** be used to inflict injury; keys; non-regulation clothing; Afro or Rake combs; gasoline; lighter fluid; razors; fingernail files; and all other items not available for purchase in the Inmate Commissary.

7

routine tive  it while  y  t m  ja  s  r  t  r  l  l  r  s peat extent the
total length  if  it  w  yo  must se  u  c  onfinement

Any offense that you may commit while you are in jail that is a
violation of the Criminal Code of the State of Texas will result in
additional criminal charges filed against you. Additionally, any
violation of a jail rule will result in disciplinary action.

All incidents of misconduct, **except minor acts which Detention
Officers will handle on the spot,** will be reported. **Prohibited acts will
be referred to the Chief Jailer or Disciplinary Board for action.** The
Disciplinary Board is composed of: The Chief Deputy and any three
(3) members appointed by the Sheriff to serve not more than three (3)
months in any calendar year.

The Chief Jailer will review all **Incident Reports.** Those which are of
serious nature will be referred on to the Disciplinary Board. Those
**incidents** which are not serious enough for referral to the Disciplinary
Board will be investigated by the Assistant Chief Jailer, to include
hearing the inmate's version. The Chief Jailer may restrict the below
listed privileges for periods not to exceed fifteen (15) days as a
disciplinary measure. Such measures will be impartially and equitably
applied across all inmates. Records of these infractions, hearings and
punishments will be placed in the **Inmate Record File.**

**The following are NOT constitutionally required:**

1. The inmate is not entitled to confrontation and cross-examination.
   The permitting of confrontation and cross-examination is left to
   the discretion of the Disciplinary Board. The board shall document
   reasons for the refusal.
2. The inmate has no constitutional right to **Retained or Appointed
   counsel.**

8

Disciplinary Actions include

- Isolation for periods up to two (2) weeks
- Loss of "Jail Good-Time "
- Forwarding of records of Disciplinary Board hearing to TDC
- Loss of privileges (Not to exceed two (2) weeks):
      Personal Telephone
      Commissary
      Education
      Group Recreation
      TV and/or Radio
- Written Admonishment.

## NOTIFICATION
Both the Sheriff and the inmate will be notified of the action by the  Disciplinary Board.

## APPEAL
Any inmate may **Appeal Punishment** by writing the Sheriff and requesting review of the incident and hearing. The result of the review by the Sheriff, which is final, will be delivered to the inmate and become a part of the **Inmate Record File.**

**The following is a list of the prohibited acts in the Cameron County Jail (violations will result in disciplinary actions).**

001. Murder.
002. Assaulting any person.
003. Fighting with another person.
004. Threatening another person with bodily harm, or with any offense against his person or his property.
005. Extortion, Blackmail, Protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.
006. Engaging in sexual proposals or threats to another.
007. Making sexual proposals or threats to another.
008. Indecent exposure.
009. Escape.
010. Attempting or planning escape.
011. Wearing a disguise or mask.
012. Setting a fire.

9



016. Solicitation of a gift or loan

017. Possession or introduction of a explosive or any ammunition

018. Possession or introduction of a gun, firearm, weapon, sharpened instrument, knife or unauthorized tool

019. Possession, introduction, or use of any narcotic, narcotic paraphernalia, drugs, or intoxicants not prescribed by the Medical Staff.

020. Misuse of authorized medication

021. Possession of money or currency.

022. Possession of property belonging to another person.

023. Loaning of property or anything of value for profit or increased return.

024. Possession of anything not authorized for retention or receipt by the inmate, and not issued to him thorugh regular institutional channels.

025. Possessing any Sheriff Department clothing other than Authorized Jail Issues

026. Possessing unauthorized clothing.

027. Mutilating or altering clothing issued to you by the County.

028. Rioting

029. Encouraging others to riot.

030. Engaging in or encouraging a group demonstration.

031. Refusing to work.

032. Encouraging others to refuse to work or particpation in work stoppage

033. Refusing to obey an order of the Sheriff or any member of his Staff.

034. Conduct which disrupts or interferes with the security or orderly running of the Institution.

035. Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper

036. Being in an unauthorized area.

037. Failure to follow safety or sanitation regulations.

038. Failing to stand count.

039. Interfering with the taking of count.

040. Making intoxicants.

041. Being intoxicated.

042. Using abusive or obscene language.

10

046. Corresponder... ... ...occur... with... ... n... violation of posted regulations

047 Giving or offering any Official or Staff Member a bribe or anything of value

048 Destruction of jail or county property.

049 Defacing or mutilating the jail.

050 Destruction of the property of another inmate.

051. Giving money or anything of value to, or accepting money or anything of value from: another inmate, a member of his family or his friend.

052. Attempting to commit any of the above offenses, and making plans to commit any of the above offenses shall be considered the same as a commission of the offense itself.

## XV. CHANNELS OF COMMUNICATION

There are certain people to contact regarding your various needs and problems. The sections in this Handbook tell you who to contact about specific matters. If you have a special problem that cannot be handled by that person, you may write a note to the Sheriff stating the nature of your problem and the assistance requested.

The inmate grievance procedure is established as a structure for the resolution of complaints, providing inmates with an opportunity and a procedure to file a grievance while confined, supplementing but not replacing any informal grievance procedure or the inmate disciplinary procedure.

There is established a Grievance Review Board consisting of the Jail Administrator, one Jail Lieutenant and one Jail Sergeant, who shall be designated by the Sheriff to serve on the Board. This Board shall handle the grievances. All inmates will be informed of the availability of the grievance procedure in the Inmate Handbook provided to each inmate when admitted to the facility and by posting copies of this procedure and a form for filing a grievance around the facility.

Staff members of the facility are encouraged to resolve grievance complaints, thereby eliminating the need for the filing of a Formal Grievance Complaint. However, if needed, an inmate shall file a grievance by filing a written statement promptly following the incident in question, sealed in an unstamped envelope and forwarded through the regular mail collection system. Such communication shall be promptly and without interference transmitted to the Grievance Review Board. To facilitate the grievance, materials shall be provided to file a grievance, including a form to be completed, an envelope and a pen. In filing the grievance, the inmate (on the form) shall state fully the following: (1) the right or privilege allegedly violated; (2) the persons involved; (3) the witnesses to the incident; and (4) the times, dates, and any other pertinent details.

Some of the grounds for initiating a grievance are as follows: (1) the violation of an individual's civil rights; (2) criminal activity or conduct; (3) wrongful denial or limitation of an inmate privilege; or (4) a prohibited act by a staff member while on duty.

Upon receipt of the grievance, the Grievance Review Board will review same to determine if the grievance is an emergency (where delay could subject the inmate to personal injuries or other such problems) and the nature of (i.e., the grounds for) the grievance. Situations requiring emergency action will be handled immediately upon receipt of the grievance; otherwise, upon determining the category of the grievance (other than an emergency), one of the members of

The Grievance Review Board will also [illegible]

jailer designated by the Sheriff, who will investigate fully the allegation, of the grievance. A report will be made to the Grievance Review Board, who will take appropriate action to handle the grievance and send a written response to the inmate, including a summary of the incident and the action taken; this report will be prepared as soon as possible, but no later than fifteen days. Previously denied privileges, good time credit earned, visitation privileges, or change in classification will be corrected and all appropriate action taken upon review of a substantiated grievance.

Any staff member who subjects an inmate to harassment, curtailment of privileges or any type of punishment because of a grievance report, or who attempts to prevent or interfere with the reporting of a grievance, shall be subject to disciplinary (personnel) action.

Any inmate may request a hearing before the Grievance Review Board if any findings or action of the Board is disputed. Upon receipt of the hearing request, the Board will reconvene as soon as possible but no later than fifteen (15) days for a hearing and will respond in writing once again to the grievance. For these hearings, the Board's decision will be made by a majority vote and the written response delivered to the inmate shall include the following: (1) the names of the Board members; (2) the witnesses appearing; (3) a summary of the evidence and testimony presented; and (4) any recommendations for corrective action and reasons for the recommended action. At the hearing, an inmate may present evidence, written documents, and call witnesses to establish the validity of the grievance, provided that such actions do not jeopardize the security of the facility.

If the decision of the Grievance Review Board is disputed by the inmate, the decision may be appealed (for a final decision) to the Sheriff. The Sheriff, on receiving the appeal, will review the findings and actions of the Board, and will respond in writing with his final decision as soon as possible, but no later than fifteen (15) days.

Records of all hearings, reviews, and action taken will be maintained by the Jail Administrator. A copy of inmate notification letters will be placed in the inmate's file. No information regarding any grievance proceeding will be released unless approved by the Sheriff or one of his authorized representatives.

# EXHIBIT "4"

# POLICY AND PROCEDURE MANUAL
# FOR CAMERON COUNTY JAIL



**ALEX F. PEREZ**
CAMERON COUNTY SHERIFF

CAMERON COUNTY SHERIFF'S DEPARTMENT
954 E. HARRISON ST.
BROWNSVILLE, TEXAS 78520
(512) 544-0860

*"HELP US TO SERVE YOU BETTER"*

```
******************************************************************
*                                                                *
*                                                                *
*                                                                *
*                                                                *
*                  POLICY AND PROCEDURE MANUAL                    *
*                  FOR THE CAMERON COUNTY JAIL                    *
*                                                                *
*                                                                *
*                                                                *
*                        CONDUCTED FOR                           *
*                    SHERIFF ALEX F. PEREZ                       *
*                                                                *
*                                                                *
*                                                                *
*                          BY THE                                *
*                 MANAGEMENT SERVICES SECTION                    *
*                  FIELD SERVICES DIVISION                       *
*          TEXAS COMMISSION ON LAW ENFORCEMENT                   *
*             OFFICER STANDARDS AND EDUCATION                    *
*                                                                *
*                                                                *
*                         REVISED                                *
*                                                                *
*                     NOVEMBER 1988                              *
*                     NOVEMBER 1989                              *
*                     DECEMBER 1991                              *
*                                                                *
*                                                                *
*                                                                *
*                                                                *
*                                                                *
******************************************************************
```

## TABLE OF CONTENTS

| SECTION | POLICY | PROCEDURE |
|---|---|---|
| SECTION I | JAIL OPERATIONS | |
| 1.00 | JAIL OPERATIONS | |
| 1.01 | ADMISSIONS OF INMATES | |
| 1.01.001 | | SALLY PORT |
| 1.01.002 | | ADMISSION OF INMATES |
| 1.01.003 | | FRISK SEARCH |
| 1.01.004 | | NOTICE OF INCARCERATION BY INMATES |
| 1.01.005 | | ADMISSION RECORD |
| 1.01.006 | | CONFISCATION OF PERSONAL PROPERTY |
| 1.01.007 | | PROCESSING SEQUENCE AFTER ACCEPTANCE |
| 1.01.008 | | SEGREGATION OF SEXES |
| 1.01.009 | | SEGREGATION OF PARTICULAR INMATES |
| 1.01.010 | | SURVEILLANCE OF THE HOLDING CELL |
| 1.01.011 | | IDENTIFICATION |
| 1.01.012 | | CONFISCATION OF PERSONAL CLOTHING |
| 1.01.013 | | SHOWER |
| 1.01.014 | | MEDICAL EVALUATION SCREENING |
| 1.01.015 | | MEDICAL EXAMINATION |
| 1.01.016 | | ISSUANCE OF JAIL CLOTHING |
| 1.01.017 | | ORIENTATION |
| 1.01.018 | | CLASSIFICATION |
| 1.01.019 | | HOUSING ASSIGNMENT |
| SECTION II | ROUTINE PROCEDURES | |
| 2.02.001 | | COURT APPEARANCE |
| 2.02.002 | | COURT DOCKETS |
| 2.02.003 | | COURT CLOTHING |

| SECTION | POLICY | PROCEDURE |
|---------|--------|-----------|
| 2.02.004 | | NOTARIZATION OF LEGAL PAPERS |
| 2.02.005 | | RECLASSIFICATION |
| 2.02.006 | | ASSIGNMENT TO TRUSTY |
| 2.02.007 | | COMPUTATION OR FORFEITURE OF GOOD TIME CREDIT |
| 2.02.008 | | WORK ASSIGNMENTS |
| 2.02.009 | | USE OF THE TELEPHONE |
| 2.02.010 | | VISITATION |
| 2.02.011 | | PROCEDURE |
| 2.02.012 | | AUTHORIZED VISITORS |
| 2.02.013 | | EMERGENCY VISITS |
| 2.02.014 | | ACCESS TO CLERGY |
| 2.02.015 | | SPECIAL VISITS |
| 2.02.016 | | CORRESPONDENCE |
| 2.02 .017 | | FUNDS MANAGEMENT |
| 2.02.018 | | HEALTH SERVICE |
| 2.02.019 | | MEDICAL STAFF |
| 2.02.020 | | HYGIENE |
| 2.02.021 | | FEEDING |
| 2.02.022 | | RECREATION |
| 2.02.023 | | RELIGIOUS |
| 2.02.024 | | LIBRARY |
| 2.02.025 | | DISCIPLINE |
| 2.02.026 | | SECURITY |

SECTION III

| 3.03 | | SPECIAL PROCEDURES |
|------|--|---------------------|
| 3.03.001 | | CONTRABAND |
| 3.03.002 | | INMATE RELEASE OF PROPERTY |

| SECTION | POLICY   PROCEDURE |
|---------|---------------------|
| 3.03.003 | USE OF   PHYSICAL FORCE |
| 3.03.004 | ESCAPE |
| 3.03.005 | RIOT |
| 3.03.006 | FIRES |
| XVI | GRIEVANCES |
| 217.23.00 | FEMALE PROCESSING |
| HIV/AIDS | INMATES WITH AIDS |
| Art.  49.08 | DEATH IN JAIL |
| | HURRICANE PROCEDURES |

1.01.002 ADMISSION OF INMATES PROCEDURES

A. RECEIVING PRISONERS

The receiving officers requests to see the delivering
officers identification card which contains his photograph,
identifying data, badge number and signature of the agency
head.  If the delivering officer cannot or will not produce
such identification or his identification does not conform
to his person, his prisoner(s) is not to be accepted into
custody of the sheriff.

B. PRISONER'S CONDITION

The receiving officer observes the physical condition of the
prisoner.  If there is any visual or verbal indication that
a prisoner is injured or ill, the receiving officer is not
to accept custody of the prisoner.

1. The prisoner is to be taken to hospital for examination
   and written approval for acceptance.

2. If the prisoner is hospitalized, the accompanying officer
   assists the hospital staff with the admitting data and
   remains with the prisoner and notifies the jail
   administrator that the prisoner is to be hospitalized.

3. All prisoners admitted to the hospital are to be under
   guard by the Cameron County Sheriff's Personnel.

4. In the event a prisoner who is injured or ill may be
   approved for acceptance into custody of the sheriff
   by the hospital staff, the receiving officer is to make
   colored photographs of the prisoner as evidence of the
   condition of prisoner at the time of his acceptance
   into custody of the sheriff.  Such photographs are to be
   placed in the inmate's file.

C. LEGAL COMMITMENT DOCUMENT(S)

All prisoners accepted into custody of the sheriff are to
be accompanied by a timely properly prepared and appropria-
tely executed commitment document (All sheriff's personnel
who function as admissions officers are to be thoroughly
familiar with all types of legal commitment documents).  The
admissions officer is to refuse to accept any person into
custody of the sheriff in the absence of a valid commitment
document.

C. Enter the inmate's right index print in the appropriate space on the book-in-card.

D. Take two mug shot of the inmate and attach one photo to the jail card and one to the inmate housing card. (Refer to paragraph 1.01.018 C.)  If inmates wear prescription glasses, take two mug shots (extra).

1.01.012   CONFISCATION OF PERSONAL CLOTHING

Clothing worn by a prisoner is to be taken from him on admission in order to ensure that contraband does not come in with him.

A. If bond has been made (or is immininent), the inmate is to be returned to a holding cell to await release.

B. Jail clothing is to be issued to inmates who are to be detained for a period of over 48 hours.

C. No personal item of clothing is to be permitted within the jail living area after they have been inspected for contraband.

D. Execute a property card for the inmate listing an accurate and concise description of each item of clothing taken from him.

1. Instruct the inmate to sign the property receipt.

2. Place all articles of the inmate's clothing in a property bag (except vermin-infested clothing which is to be set aside, noted with the inmate's name and S.O. number and sterilized before it is stored.

3. Note the property bag number on the inmate's property receipt.

4. Seal the property bag and store it in mnumerical sequence in the clothing storage room.

1.01.013   SHOWER

All prisoners being admitted to the Cameron County Jail should have access to a shower prior to being placed with the rest of population.

A. If a bruise, cut, or other evidence of injury is evident on the inmate's body., which was not obvious until  he undressed, it is to be noted on the medical history form.

B. If any scars, tattoos, or other identifying marks are observed, they are to be noted on the jail classification profile form.

1.01.014   MEDICAL EVALUATION SCREENING

When an inmate has completed showering, a medical evaluation screening is to be performed by the jail nurse or a detention officer in accordance with established procedures and with the greatest  degree of dignity possible for the inmate.  Under no circumstances is a detention officer to address any personal remarks to an inmate being medical evaluated concerning his person or physical attributes.  (See appendix for medical evaluation).

A. In the event contraband may be discovered on or in the body of an inmate, the procedure set forth in paragraph 1.01.003 C is to be observed.

1.01.015    MEDICAL EXAMINATION

Following the medical evaluation screening, it is preferable to have each inmate medically examined by a physician in accordance with prevailing medical provisions.

A. RECEIVING SCREENING

1. Receiving screening can be important in terms of protecting against legal liability.

2. If there is a written document of an inmate's medical condition at the time of admission, the inmate may not later claim that he had a specific injury or illness at that time which was never treated. The screening form will show that he did not have any such obvious injury or illness.

3. Aside from specific liability suits, the very fact that every new inmate is screened for medical and health status could be important in the eyes of a court. It could indicate to the court that the jail is acting positively to ensure that the health and well being of inmates are maintained.

B. A medical record is to be initiated for each inmate with notation of any date which may be pertinent to the classification, housing, feeding, work assignment, and other treatment of inmate.

C. The medical record is to be attached to the inmate's file.

D. If an inmate may be discovered to have a communicable disease such inmate is to be isolated immediately and transferred to the hospital. The chief medical doctor will make the decision to transfer the inmate or isolate him in the facility infirmary.

E. Before a hospital card is rendered of before any medical of surgical procedure is undertaken, consent to such care to treatment must be obtained from the inmate patient of someone authorized to consent for the inmate.

1.01.016    ISSUANCE OF JAIL CLOTHING

Upon completion of the book-in procedure, each inmate is to be issued the following items:

A. Coveralls ( at the present time the only clothing issued is one pair of coveralls, however, arrangements are to be made for under clothing and socks).

B. Bedding/Linen

On arrival at assigned housing floor, the floor officer will issue the following:

H. COMMISSARY

Each inmate is allowed to purchase certain personal
comfort and sundry items from jail personnel on
approval from jail administrator.

I. All requests for purchases are processed through the
commissary clerk.  The commissary clerk will have the
responsibility to:

1. Ensure that the inmate has sufficient funds on
deposit to cover purchase(s).

2. Make the appropriate and timely deductions from the
inmate's trust fund balance.

2.02.018        HEALTH SERVICE  (Estelle vs. Gamble 42 U.S. 97 (1976)

A. The Cameron County Jail is to provide medical service
for inmates on a 24 hour basis.  Each inmate shall be
accorded the most expedient and appropriate medical
attention that may be available to him.  The medical
staff is charged with the responsibility to adhere to
community-informed consent standards for treatment and
procedures as specified by the chief medical officer.

1. The registered nurse (R.N.) shall routinely make a
daily round throughout inmate living quarters during
his shift to conduct sick call.

2. Detention officers shall accord the medical staff their
full and prompt cooperation and are responsible to remain
alert to inmate's who may appear to be physically ill or
injured but who have not registered a medical complaint.
Detention officers have the responsibility and obligation
to refer medical staff to such inmates during their next
conducted sick call.

2.02.019        MEDICAL STAFF

The medical staff is charged with the responsibility to examine
the inmate patient, administer the appropriate treatment, and
make one of the following dispositions:

1. Treat the injury or illness and return the inmate to his
housing area.

2. Admit the inmate patient to the jail infirmary or:

3. Arrange for transport of the inmate patient to the
hospital.

A. DENTAL

Dental services are available to inmates.  A dental list

shall be maintained by the R.N. and the following procedures shall be followed in extending dental services to inmates:

1. When an inmate may request or require dental attention the inmate is to be referred to the medicla staff who, in turn, will ensure that the inmate's name is placed on the dental list.

B. OPTICAL

Eye examinations (and eye glasses, if required) are to be made available to inmates under following conditions.

1. All requests for eye examinations/eye glasses which may be made by an inmate or a member of the medical staff are to be submitted to the jail administrator who will ascertain if the inmate has sufficient funds in his trust fund account to pay for the glasses. (The eye examination will be performed by an ophthal-mologist, a member of the medical staff, at no charge to the inamte.)

2. If payment is made by the inmate, he shall execute a a release payment direct to the optometrist.

CAMERON COUNTY JAIL FACILITIES, DETENTION CENTER
AND JUVENILE DEPARTMENT

RULES AND REGULATIONS FOR
PHYSICIANS' ASSISTANTS AND NURSES

1. The job consists of forty (40) hours a week, eight (8) hours
   a day. A weekend schedule will also be prepared.

2. Working time will be arranged on a schedule prepared one
   month in advance. Any change on the schedule such as- - -
   hours, sick leave, vacations or early leave must be
   authorized by the Supervisor. Written notification of
   schedule changes must be issued to the Supervisor, in
   advance, to make adequate arrangements for coverage.

3. Sick leave requires a doctor's note justifying the absence
   without authorization or prior notification.

4. Assignments to the Jail or the Detention Facility will
   be issued by the Supervisor on a rotation schedule
   unless otherwise agreed to by all parties.

5. Inmate care requires teamwork and if help is needed by
   another nurse in another facility, such help should be
   provided without hesitation.

6. For eight (8) hours on call a nurse will receive one (1)
   hour compensation time, for sixteen (16) hours, will receive
   two (2) hours compensation time.

7. Compensation time will be compensated with time off.

8. Any referrals to a physician outside the Jail will be done
   only after evaluation by the physician unless the inmate
   is pregnant or if it is felt it cannot wait for evaluation
   by the Jail Physician.

9. Referrals will be issued only after notifying the
   Supervisor or the Jail Doctor unless it is a life and death
   situation.

10. Any patient seen, must have appropriate records including
    a chart (if it is a more complicated illness).

11. Diagnosis and/or evaluation of inmates cannot be done by
    phone. If a call is made by the Duty Sergeant or Duty
    Lieutenant requesting medical attention, a direct evaluation
    will be done as soon as possible.

12. Notify the Supervisor or Dr. Stern of any illness or injury
    which is not common or routine.

CAMERON COUNTY JAIL FACILITIES, DETENTION CENTER
AND JUVENILE DEPARTMENT

RULES AND REGULATIONS FOR
PHYSICIANS' ASSISTANTS AND NURSES - PAGE TWO

13.  Periodic evaluations of medical personnel will be done every
     three (3) months and a file will be kept.

14.  Periodic reports of activity will be done on a weekly basis.

15.  An attempt will be made to see all inmates that request
     medical attention.  But, in cases where the number of cards
     is excessive, a priority of illness will be given and the
     inmate that needs more prompt attention will be seen first.
     The others will be seen later.

16.  During the evening hours and during the weekend, inmates
     will be seen by priority,  But, not less than ten (10)
     inmates on each side (Jail, Detention Center).

17.  Physicians' Assistant and/or nurse will  be responsible
     for seeing any inmate that sends cards during the evening.
     Inmate will be seen and preparation of medication
     will be issued for the following shift, (12:00 Midnight,
     7:00 AM and Noon).

18.  Evening shift and weekends should be considered as a
     regular shift.  Not only emergencies should be seen but
     also other inmates that are semi-emergencies such as
     upper respiratory tract infections, trauma, etc.

19.  Charts:  Charting findings and medications is a very
     important aspect of medical care.  Failure to do so,
     indicates a substandard quality of medical care and will NOT
     be allowed in this institution.  Failures include the
     following:

         To obtain laboratory and x-ray reports
         To distribute prescribed medications
         To obtain previous medical records
         To file laboratory reports
         To chart medications dispensed
         To chart inmate's refusal to take medication
         To chart controlled substances used
         To document accidents
         To document follow-up care

20.  Follow-up of inmates:  After an inmate is properly
     evaluated and if the nurse feels that this inmate needs to
     be followed-up in the evening or following day,
     proper communication with the next shift nurse will be
     issued IN WRITING to follow-up these patients.

CAMERON COUNTY JAIL FACILITIES, DETENTION CENTER
AND JUVENILE DEPARTMENT

RULES AND REGULATIONS FOR
PHYSICIANS' ASSISTANTS AND NURSES ¬'PAGE THREE

20. (Continued)  Also proper documentation will be done to
    follow-up inmates (2, 3, or 7 days later).

21. Substance Control:  Appropriate records will be maintained
    for all controlled substances.  Each shift will be
    responsible for counting controlled substances of the
    previous shift or from the previous day to assure that the
    number of medications are'correct.  Doctor MUST be notified
    when controlled medications are missing.

22. Considering that quality medical care cannot and will not be
    compromised in any manner, please note the following:  After
    a nurse has been notified of not following this protocol,
    and if these mistakes are not corrected, nurse will be
    subject to disciplinary action or job dismissal.

23. Purchasing equipment, medications or supplies needed:  Only
    "emergency needed" medications will be purchased without
    prior authorization.  Purchasing supplies, equipment, and/or
    medications, for routine usage,  will be purchased
    wholesale, ' monthly.  Routine purchases require prior
    approval of the Supervisor and/or the Jail Director.  Any
    purchase order above $500.00 requires approval from the
    Supervisor and the Jail Director.

CAMERON COUNTY JAIL, DETENTION CENTER,
AND JUVENILE DEPARTMENT
MEDICAL PROCEDURE

1. PROCEDURE FOR DISBURSEMENT OF:

   a) Prescriptions – called into pharmacy and dispersed as indicated.
   b) Medications – medications are prepared by licensed medical personnel.
   c) Syringes – syringes are disposed of into either destructo–clips or
      Biohazard containers and a contract kept at a private Hazardous
      Container Eliminator.
   d) Needles – as above.

2. An inmate has the right of preservation of body integrity.
   Informed consent or signed and witnessed refusals to by indicated by
   medical personnel if inmate is of sound mind and body to make these
   decisions – if not the decision will be made by medical personnel in
   the best interests of all involved and protection of security.

3. There is also an inventory taken of markings i/e  tatoos etc. and
   conditions of body orifices.

4. The presence of lice and vermin is also documented and proper precautions
   are taking by those attending such inmate.

5. Any inmate who has a medical record should be periodically documented
   on wheather improving, healed, released from custody or referred to an
   agency i/e MHMR, TDC, USDM, Family etc.
   If inmate is released to another agency, a copy of any pertinent findings
   or treatments should accompany inmate so that the receiving agency may
   better treat such inmate.

## C. CONTROL OF MEDICATIONS

1. Any drugs or medications in the possession of an inmate are to be confiscated on admission to the Cameron County Jail. They are to be placed in a paper bag marked with the inmate's name and forwarded to the medical staff. The medical staff is to confirm or verify that the content(s) of the container(s) are in fact the medication(s) claimed.

2. If the inmate is to be detained beyond 24 hours, the medical staff is to obtain a new prescription of the required medication.

3. The only exception to this procedure is for females. Females will be permitted to use drugs relating to the menstrual cycle which are in their possession upon admission. The nurse staff will determine that the drug is in fact what it is purported to be and then continue administering it without a break in the cycle.

4. The female inmate will be required to replenish an exhausted supply, if not indigent. Otherwise, it will be replaced at the county's expense.

## D. ADMINISTERING MEDICATIONS

All drugs and medications prescribed for inmates are to be kept in a locked facility in the booking office. At no time will an inmate be allowed access to this area without immediate supervision of a detention officer.

1. All medications administered to the inmates will be accomplished by a detention officer.

2. All medications prescribed for an inmate will be listed on a medication log sheet. The detention officer is responsible for two actions.